## A. M. Hewitt v. D. G. Hornbuckle.

1. EVIDENCE—*When Incompetent in Proceedings by Distress for Rent.*—In a proceeding by distress against a tenant for a breach of a lease in which he had covenanted not to remove any of the grain grown on the land, or to sell the same or any part of it, until the rent was fully paid, it is error to permit him to testify, over the objection of the landlord, that "the reason he hauled off the corn at night was that he was hungry and needed money, and it was the only way he could get money to buy anything to eat," as such evidence is calculated to unduly arouse the sympathies of the jury in favor of the tenant.

2. SAME—*As to the Lessor's Failure to Repair Fences and Cut Weeds.*—In a proceeding against a tenant for a failure to comply with the provisions of a lease requiring him to keep "all fences in good repair and to build such new ones as might be needed, the lessor furnishing the rails, posts and such other material in the timber, and to keep the land freed from weeds," to permit the tenant, over the objection of the lessor, to show that he (the lessor) never rebuilt or repaired the fences or cut the weeds on the demised premises as the tenant should have done according to the provisions of the lease, is improper and prejudicial to the landlord.

3. INSTRUCTIONS—*In Proceedings by Distress for Rent.*—In a proceeding by distress for rent, it is error to instruct the jury that if they believe from the evidence that the plaintiff, after leasing the premises to the defendant and before the expiration of the term, without the consent of the defendant, leased a part of the premises to another party, and without the consent of the defendant deprived him of the possession of that part so leased to such other party, then in law the defendant was released from the payment of all rent accruing under the lease, notwithstanding he continued to occupy a portion of the demised premises after that time, where the evidence shows that the defendant requested such leasing and surrendered that part of the premises before it was let to such other party.

4. SAME—*As to Estoppel by Surrender—Distress for Rent.*—In a proceeding by distress against a tenant for a failure to keep the covenants of a lease under seal, an instruction that if the jury should believe from the evidence that during the term of the lease in question the defendant voluntarily surrendered to the plaintiff the possession of any portion of the premises described in said lease, and that the plaintiff consented to such surrender, either by express words or by acts of control over such portion of said premises, then and in that event the plaintiff would be estopped from recovering any rent of the premises so surrendered, and would be estopped from claiming any damages for a breach of any of the terms of said lease pertaining to the portion of said demised premises so surrendered, is proper, and should be given.

5. SAME—*As to a Surrender Where the Lease Is Under Seal.*—In a proceeding against a tenant by distress, an instruction that 'under the law the terms of the lease could not be changed or varied except by a written instrument under seal and signed by the parties, and even though the jury might believe from the evidence that a verbal agreement was made between the lessor and the lessee by which the lessor was to take the remainder of the land, except that put in corn by the lessee, and changing the terms of the lease, such verbal agreement is not binding in law and should not be considered by the jury in arriving at their verdict in the case, is properly refused, where the evidence tends to show that there had been a surrender of a portion of the demised premises.

**Distress for Rent.**—Appeal from the Circuit Court of Christian County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the May term, 1901. Reversed and remanded. Opinion filed September 11, 1901.

J. C. & W. B. McBRIDE, attorneys for appellant.

DRENNAN & ANDERSON, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

On February 17, 1899, appellant instituted in the Circuit Court of Christian County, distress for rent proceedings against appellee, and in his landlord's warrant claimed that he leased to appellee a farm of 188 acres, situated in said county, for the crop year of 1898; and the warrant charged that appellee failed to pay appellant $50 of the cash part of the rent of the farm, and failed to cultivate a part of the farm, to wit, fifty acres, to cut the weeds, to repair the fences, and to properly cultivate the crops he planted thereon as in the lease he had expressly agreed to; and that by reason thereof, appellant was damaged in the sum of $250 above the $50 cash rent, making in all $300 which appellee owed appellant under the terms of the lease; that without the consent of appellee, appellant sold and removed, or permitted to be sold and removed, and was about to sell and remove, or permit to be sold and removed from the farm, such portion of the crops grown thereon for said year, as would endanger appellant's lien upon same for said rent and damages.

Hewitt v. Hornbuckle.

The warrant was levied upon a lot of corn and oats, and the same was indorsed on it, and it was returned to the Circuit Court.

To the warrant, appellee pleaded a general denial, upon which issue was joined and the proceeding was tried by jury and a verdict rendered for appellee. Appellant moved for a new trial, which was overruled and judgment entered upon the verdict. He excepted, and brings the proceeding to this court by appeal, and to reverse the judgment, alleges and argues for error, that the court admitted improper evidence, gave improper instructions at the instance of appellee, refused a proper instruction requested by appellant and improperly changed another instruction from what it was when requested by appellant, and gave it as changed, and that the verdict is against the evidence.

The bill of exceptions shows that appellee rented from appellant by a written lease, the 188 acres of land, as claimed in the warrant, and therein agreed to pay as rent $5 an acre for the grass or pasture land, and one-half of the grain and other products raised upon the land, to be delivered at Clarksdale or fed on the premises as appellant should direct; appellee also agreed to keep all fences upon the farm in good repair, and build such new fences as may be needed, appellant furnishing the rails, posts and such other material in the timber. And it was further expressly agreed between them that appellee should farm the land in a good husbandmanlike manner, raise the greatest amount of grain upon it that the soil and season would permit, keep the land free from weeds, brush and burs, and keep all necessary ditches and drains plowed and cleaned out during the continuation of the lease.

And appellee covenanted not to remove any of the grain grown on the land or to sell the same or any part thereof until the rent was fully paid, and that in case any grain should be removed or attempted to be removed, or if appellee should sell or attempt to sell said grain or produce, or any part thereof, before the rent is full paid, then the rent shall immediately become due and payable, and appellant

shall have the right to enter, take possession, remove the
same and sell it, and if it shall not be sufficiently matured for
harvesting or gathering, to cultivate, protect and preserve
it until it shall be fit, and then gather, harvest and sell it
or any part of it, at private or public sale, and apply the
proceeds thereof to the payment of the expenses and costs
of carrying out the provisions of the lease and the payment
of said rent. And that if appellee shall fail to cultivate
the land as set forth in the lease, or shall fail to keep any
of the covenants, all damages growing out of such failure
shall be added to and become a part of the rent and recov-
erable as such.

That for the crop year of 1898, appellee sowed about
twenty-five acres of the land in oats, and planted about fifty
acres of it in corn, and used about ten acres of it to pasture
his stock, and in the spring of that year he informed appel-
lant that he would not plant any more of it in corn, that it was
too late and wet to put any more of it in oats, and requested
him to rent it to some one else; but appellant insisted upon
appellee cultivating the farm, as he had, by the lease, agreed
to, and appellant promised to furnish appellee help to aid
him to do so. Appellee, however, would not plant more
than the fifty acres in corn, declined to let appellant furnish
help to aid him, and insisted upon appellant letting some
one else put the balance of the land in corn; and on May
29, 1898, appellant rented fifty acres of it to one Hogarth,
who planted that much of it in corn, and the remainder of
the farm, being about fifty acres, was not used or cultivated
by any one.

Appellee did not cultivate the part of the farm which he
used very well; neither did he repair the fences, cut the
weeds, or keep the burs off the land, as he had, by the lease,
agreed to; and, without paying appellant any part of the
rent, partially thrashed the oats he raised and partially
shucked the corn he grew, and began selling and hauling
them off, and, by the help of others, had succeeded in get-
ting the larger part of them away, and was, on the night of
February 25, 1899, himself hauling some away, when he

was stopped by the levy of landlord's warrant in this case.

Over the objection of appellant, the court permitted appellee to testify that the reason he hauled corn off at night, was that he was hungry and needed money, and it was the only way he could get money and buy something to eat, and it is urged that this testimony was improperly admitted and was prejudicial to appellant.

This testimony, in our opinion, was not competent under any issue involved herein, and being well calculated to unduly arouse the sympathy of the jury in favor of appellee, should not have been admitted.

At the instance of appellee, the court, over the objections of appellant, gave the jury the following instructions:

" 1.   The court further instructs the jury, that the principle upon which a tenant is required to pay rent is the beneficial enjoyment of the leased premises.   And if the jury believe from the evidence that the plaintiff, after leasing the premises to the defendant, before the expiration of said lease, without the consent of the defendant, leased a part of said premises to Richard Hogarth, and thereby, without the consent of the defendant, deprived the defendant of the possession of that part of said leased premises, so leased to said Hogarth, then, in law, the defendant was thereby released from the payment of all rent accruing under said lease, notwithstanding the fact that the defendant continued to occupy a portion of said leased premises after that time.

" 2.   The court further instructs the jury, that if the jury should believe from the evidence that during the term of the lease in question the defendant voluntarily surrendered to the plaintiff the possession of any portion of the premises described in said lease, and that the plaintiff consented to such surrender, either by express words or by acts of control over such portion of said premises, then, and in that event, the plaintiff would be estopped from recovering any rent of the premises so surrendered, and would be estopped from claiming any damages for a breach of any of the terms of said lease pertaining to the portion of said demised premises so surrendered."

And refused to give the following instruction offered by appellant:

" The court instructs the jury, that the lease or contract offered in evidence is under seal, and that under the law the terms of such lease could not be changed or varied excepe by a written instrument under seal and signed by the parties; and even though you may believe from the evidenct that a verbal agreement was made between Hewitt and Hornbuckle, by which Hewitt was to take the remainder of the land, except that put in corn by Hornbuckle, and changing the terms of such contract, such verbal understanding or agreement is not binding in law, and should not be considered by the jury in arriving at their verdict in this case."

And changed the following instruction offered by appellant by adding thereto the words in parenthesis:

" The court instructs the jury, that even though you may believe from the evidence that Hewitt did not rebuild the fence or cut the weeds required by the lease, if any to be rebuilt and cut by Hornbuckle, this would not release Hornbuckle from the performance of these matters (if required of him) under his contract, and he would be liable for the damages sustained, even though Hewitt did not rebuild the fence or cut the weeds."

And over the objection of appellant, permitted appellee to show that appellant never rebuilt or repaired the fences or cut the weeds on the demised farm, which appellee should have done according to his covenants in the lease.

The testimony was improper and prejudicial to appellant, and ought not to have been admitted because it was not necessary for appellant to rebuild or repair the fences or cut the weeds in order to recover damages from appellee for his failure to do so in accordance with his covenants in the lease; and besides, the court failed to correct whatever prejudice this objectionable testimony might have worked upon the minds of the jury against appellant, by refusing to give the instruction as it was requested; and by the change, improperly left it to the jury to determine whether the contract (lease) required appellee to rebuild the fences and cut the weeds, when it was the province of the court, and not the jury, to construe the contract (lease) between the parties.

The first of appellee's instructions should not have been

Hewitt v. Hornbuckle.

given, for by it the court told the jury that if they believed from the evidence that the plaintiff, before the expiration of the lease, and without the consent of appellee, leased a part of the demised farm to Hogarth and deprived defendant of same, then in law, he was thereby released from payment of all rent accruing under the lease, notwithstanding he continued to occupy a portion of the demised premises after that time, when the evidence showed that appellee requested such leasing, and surrendered that part of the demised farm which appellant rented to Hogarth; and appellee could not voluntarily surrender a part of the farm to appellant and retain the other, and then refuse to pay rent upon the part he retained.

Appellee's second given instruction was proper under the evidence and is not open to the objection which counsel for appellant urges against it.   And appellant's refused instruction was properly refused, because the evidence tended to show that there had been a surrender of a portion of the farm, and it should not have been given for that reason.

The verdict is against the evidence, and was most likely influenced by the improper evidence admitted and the erroneous rulings of the court on the instructions above indicated, and therefore we will reverse the judgment and remand the case for a new trial, not inconsistent with the views herein expressed.   Reversed and remanded.

# CASES

# APPELLATE COURTS OF ILLINOIS.

## FOURTH DISTRICT—AUGUST TERM, 1901.